**20-17202**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

LAUSTEVEION DELANO JOHNSON,

Plaintiff-Appellee,
v.

RENEE BAKER, et al.,

Defendants-Appellants,

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA (LAS VEGAS)
2:15-cv-00884-JAD-NJK

---

## APPELLANT'S OPENING BRIEF

---

Respectfully submitted by:

AARON D. FORD
Attorney General
D. RANDALL GILMER (Nevada Bar No. 14001)
Chief Deputy Attorney General
FRANK A. TODDRE II
(Nevada Bar No. 11474, California Bar No. 314436)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
(702) 486-3149 (phone)
(702) 486-3773 (fax)
ftoddre@ag.nv.gov
*Attorneys for Defendants-Appellees*

# **TABLE OF CONTENTS**

INTRODUCTION .......................................................................... 1

I.   JURISDICTIONAL STATEMENT ................................................ 2

II.  STATEMENT OF THE ISSUES PRESENTED ............................ 3

III. STATEMENT OF THE CASE ...................................................... 3

   A. PROCEDURAL HISTORY PRIOR TO TRIAL ............................... 4

     1. COMPLAINT AND SCREENING ORDER ............................... 4

     2. GERMANE SUMMARY JUDGMENT FACTS ......................... 5

       a. QUALIFIED IMMUNITY DETERMINATION.................................. 7

       b. SURVIVING CLAIMS FOR BENCH TRIAL..................................... 9

   B. BENCH TRIAL ..................................................................... 9

     1. TRIAL BRIEFING.............................................................. 10

     2. FACTS AND ISSUES GOING INTO TRIAL ........................ 10

     3. JOHNSON'S CASE IN CHIEF ........................................... 11

     4. DIRECTED VERDICT IS PARTIALLY GRANTED................. 12

     5. THE NDOC CASE IN CHIEF ........................................... 13

       a. INSTITUTIONAL SECURITY........................................................ 13

       b. DISCIPLINARY ISSUES WITH SCENTED OILS............................. 15

       c. INMATE HEALTH CONCERNS ................................................... 17

       d. INSTITUTIONAL RESOURCE CONCERNS ................................... 18

       e. ORDERING AND DISTRIBUTION PROCESS.................................. 19

     6. DISTRICT COURT JUDGMENT ....................................... 20

IV.   STANDARD OF REVIEW ................................................22

V.    SUMMARY OF ARGUMENT ........................................23

VI.   ARGUMENT ...........................................................24

    A. Relevant Legal Standards ...................................24

      1. Civil Rights Claims Under § 1983 ...........................24

      2. RLUIPA ..................................................24

    B. Analysis ...................................................25

      1. The NDOC Considered Alternative Means .........25

      2. Case Law provides Clear Error...........................29

          a.   AR 810 Does Not Impose a Substantial Burden ...........29

          b.   NDOC Presented Compelling Interests .......................32

      3. The Injunctive Relief is Overly Broad and/or Moot ..........34

VII.  CONCLUSION .................................................36

STATEMENT OF RELATED CASES ....................................38

CERTIFICATE OF COMPLIANCE .......................................38

CERTIFICATE OF SERVICE..............................................39

# TABLE OF AUTHORITIES

## CASES

*Al-Amiin v. Morton*
528 Fed. Appx, 838, 843-44 (10th Cir. 2013) ........................................ 33

*Allen v. Iranon*
283 F.3d 1070, 1076 (9th Cir.2002) ..................................................... 22

*Alvarez v. Hill*
518 F.3d 1152, 1156–1157 (9th Cir.2008) ............................................ 28

*Anderson v. Vare*
No. 2:07–cv–01117–RCJ–RJJ, 2010 WL 11623518, at *5 (D. Nev. Apr. 1, 2010) .................................................................................................. 32

*Anderson v. Warner*
451 F.3d 1063, 1067 (9th Cir. 2006) ..................................................... 24

*Baltoski v. Petorius*
291 F. Supp. 2d 807, 809 (N.D. Ind. 2003) ............................................ 7

*Blake v. Rubenstein*
2016 WL 5660355, *23 (S.D.W. VA. Apr. 5, 2016) ............................... 29

*Brown v. United States*
329 F.3d 664, 671 (9th Cir.2003) ......................................................... 22

*Chernetsky v. St. of Nev.*
2007 WL 9677057 (D. Nev. July 13, 2007) ............................................ 8

*Conn v. Gabbert*
526 U.S. 286, 290 (1999) ....................................................................... 24

*Crumpton v. Gates*
947 F.2d 1418, 1420 (9th Cir. 1991) ..................................................... 24

*Curry v. California Dep't of Corrections*
2012 WL 968079, *6 (N.D. Cal. Mar. 21, 2012) .................................... 30

*Cutter v. Wilkinson*
544 U.S. 709, 725 n. 13 (2005) ............................................................ 32

*Greene v. Solano County Jail*
513 F.3d 982, 989 (9th Cir.2008) ........................................................ 28

*Hammons v. Saffle*
348 F.3d 1250, 1255 (10th Cir. 2003) .................................................. 34

*Higgason v. Farley*
83 F.3d 807, 811 (7th Cir.1996) .......................................................... 35

Incumaa v. Ozmint
507 F.3d 281, 287 (4th Cir. 2007) ....................................................... 35

*Jenkins v. Sinclair*
2018 WL 4608312 (W.D. Wash. Sep. 4, 2018,) .................................... 30

*McDade v. West*
223 F.3d 1135, 1139 (9th Cir. 2000) .................................................... 24

*Munir v. Scott*
792 F. Supp. 1472 (E.D. Mich. 1992) .................................................... 7

*N. Queen Inc. v. Kinnear*
298 F.3d 1090, 1095 (9th Cir.2002) ..................................................... 22

*Nance v. Miser*
700 Fed.Appx. 629, 633 (9th Cir. 2007) .............................................. 30

*O'Lone v. Estate of Shabazz*
482 U.S. 342, 348 (1987) ..................................................................... 24

*Richardson v. Irons*
877 F.2d 60, 601989 WL 64178, *1 (4th Cir. 1989) ............................ 34
*Riggins v. Clarke*
403 Fed.Appx. 292, 295 (9th Cir. 2010) .............................................. 30

*Schnabel v. Lui*
   302 F.3d 1023, 1029 (9th Cir.2002) ....................................................22

*Turner v. Safley*
   482 U.S. 78, 89 (1987) ..........................................................................25

*Warsoldier v. Woodford*
   418 F.3d 989, 995 (9th Cir. 2005) ........................................................29

*Wilson v. Ryan*
   604 Fed. Appx. 635 (9th Cir. May 29, 2015)...........................................7

*Zivkovic v. S. Cal. Edison Co.*
   302 F.3d 1080, 1088 (9th Cir.2002) ....................................................22

**STATUTES**

28 U.S.C. § 1291................................................................................................3

28 U.S.C. § 1331................................................................................................2

28 U.S.C. § 1343................................................................................................2

**RULES**

9th Cir. R. 28–1................................................................................................1

9th Cir. R. 28–2................................................................................................1

FED. R. APP. P. 28............................................................................................1

Defendant-Appellant Renee Baker, by and through counsel, Nevada Attorney General Aaron D. Ford, Chief Deputy Attorney General D. Randall Gilmer, and Senior Deputy Attorney General Frank A. Toddre II, respectfully submits this Opening Brief pursuant to this Court's previous scheduling order,[1] FED. R. APP. P. 28, 9th Cir. R. 28–1 and 9th Cir. R. 28–2. The instant brief appeals the District Court's Findings of Fact, Conclusions of Law, and Order Following Bench Trial.[2]

## INTRODUCTION

Over six years ago, this case began with six fully independent causes of action, fifteen different defendants, and had claims ranging against Nevada Department of Corrections (NDOC) employees from three institutions.[3] It was hydra-like, in that each claim was wholly independent from each other, but inextricably enmeshed through the commonality of the complaint.[4]

---

[1] DktEntry No. 11. "DktEntry No. _____" references electronic filings within this Circuit Court, while "ECF No. _____" references electronic filings from the US District Court.

[2] 1-ER-002, ECF No. 172. The Motion for Reconsideration stems from the initial ruling granting in part and denying summary judgment in part as well. ECF No. 27. "_____ER_____" Represents the Volume first and Page Excerpt of Record, second.

[3] 3-ER-00347 – 3-ER-00364, ECF No. 11 Order Screening Amended Complaint and Denying Motion to Alter or Amend [ECF 9, 10].

[4] Indeed, Mr. Johnson's litigations are akin to the hydra as each litigation seems to incite more litigation without end. *See e.g.* 2:10-cv-02143-JCM-GWF *Johnson v. Alcindor et al filed 12/09/10,* 2:11-cv-00484-JCM-CWH *Johnson v. Alvarez,* 2:11-cv-00675-PMP-LRL *Johnson v. Nevada Department Of Corrections et al,* 2:14-cv-00649-RFB-VCF

1

After hundreds of pages of dispositive motion work and exhibits, the District Court issued orders that adjudicated all but two of Johnson's claims to proceed, the First Amendment and RLUIPA claims were all that remained: first, that he was denied pre-dawn Ramadan meals and the Eid al-Fitr feast in 2014 and, second, that he was entitled to an injunction allowing a narrow exception for him alone, out of all the prisoners in the State's custody, to personally possess scented prayer oil in his cell, rather than as group property maintained by the chapel, as all other religions that are permitted to maintain scented oils are required to do.

## I.    JURISDICTIONAL STATEMENT

The United States District Court, District of Nevada (Reno) ("District Court") had subject matter jurisdiction over this Civil Rights Complaint pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983. Specifically, Johnson raised several federal questions, alleging that they violated his rights under the First, Eighth, and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA), in a civil action that purportedly arose under the Eighth

---

*Johnson v. Little et al*, 2:16-cv-00366-RFB-NJK *Johnson v. Ferber et al,* 3:10-cv-00197-RCJ-VPC *Johnson v. Nash et al,*  3:13-cv-00689-VPC *Johnson v. Witter et al,*  3:14-cv-00178-RCJ-VPC, *Johnson v. Young*, etc. Without putting too fine a point on it, Johnson has filed over 40 federal complaints since his incarceration, primarily against the Department of Corrections, but also Offender Management, Parole and Probation, the Board of Directors, and various corporate entities.

Amendment of the Constitution and sought redress for alleged deprivations of civil rights via monetary and declaratory relief.

This matter is reviewable in accordance with 28 U.S.C. § 1291 because a final decision and judgment of a federal district court was entered partially in favor of the NDOC, and partially in favor of Johnson following a bench trial.[5]

## II.    STATEMENT OF THE ISSUES PRESENTED

The sole issue is whether the District Court erred in determining that Johnson was entitled to an injunction allowing him to personally possess scented prayer oil in his cell in contrast to NDOC regulations governing possession/maintenance of religious group property.

## III.    STATEMENT OF THE CASE

The claim at issue alleged NDOC's policy of allowing an inmate to use scented oil at the institution's chapel violated Johnson's religious rights by substantially burdening his religious practice. Specifically, Johnson sought an injunction requiring the NDOC to allow Johnson to store and use scented oil in his cell.

The NDOC permits certain religious groups to maintain scented prayer oils as group property. Johnson was (and is) free to purchase and use scented oil at the institution's chapel. Further, the NDOC allowed inmates to purchase and store unscented anointing oil in their cells, and Johnson remains free to use this oil for his daily prayers.

---

[5] 1-ER-10, ECF No. 173, Judgment in a Civil Case.

The NDOC provided testimony at trial and declarations during motions practice providing concerns that allowing an inmate to use and store scented oil in their cell posed a substantial security risk as it can mask illicit substances, be used in prison tattoos, cause allergic reactions, and cover medical issues. The testimony provided several real-life anecdotes regarding the concerns of permitting the injunction and ongoing risks to staff, other inmates, and Johnson himself.

## A.    PROCEDURAL HISTORY PRIOR TO TRIAL

### 1.    COMPLAINT AND SCREENING ORDER

Due to the expansive nature of the complaint and screening order, this procedural recitation will only review the surviving "Count II" of Johnson's operative pleading.[6]

The District Court screening order determined Johnson stated a colorable claim under the First Amendment Free Exercise Clause and Religious Land Use and Institutionalized Persons Act (RLUIPA).[7] Johnson alleged he is not permitted to possess scented oils in his cell, which was against Administrative Regulations, and as Johnson alleged to be required by his religion.[8] Johnson also alleged certain NDOC Employees denied him the ability to observe the mealtime traditions of

---

[6] 3-ER-347, ECF No. 11. (Screening Order). To sate any curiosity, the complaint took place over three years, at four institutions, with six independent causes of action, with fourteen defendants seeking monetary, declaratory, and injunctive relief.

[7] 3-ER-354, ECF No. 11 at 8.

[8] *Id.*

Ramadan as prescribed by his religion as to the timing of meal service and delivery of Eid-al-Fitr feast.[9]

### 2. GERMANE SUMMARY JUDGMENT FACTS

The District Court relied upon the following facts regarding Johnson's religious practice for the dispositive Motion:

- Johnson is a devout Muslim;[10]

- he believes the use of scented oil for five daily prayers a tenant of his faith but that unscented oils have no Islamic significance;[11]

- Johnson claimed he used to purchase and possess scented oil for personal and group religious use, but that, since 2010, all of his requests for scented oil have been denied, as were his grievances about the denials.[12]

The District Court noted that Johnson referred to the oil he wanted as "Muslim Scented Prayer Oil" and "Islamic scented prayer oil" but it was never clear from his complaint what quality or quantity of oil he must possess.[13]

The Administrative Regulation (AR) evolved from the filing of the complaint to dispositive motions. The AR in effect during the

---

[9] *Id*. *See also* 3-ER-341 for direct copy of complaint.
[10] 3-ER-255.
[11] *Id*, *citing* 82-5, Johnson Declaration.
[12] *Id*.
[13] *Id*.

Complaint, allowed all inmates to possess unscented oil as personal property.[14]

Approximately a month before dispositive motions (and after close of discovery) the NDOC revised its AR governing religion to permit all Faith Groups to possess scented oils as group property.[15] Neither an individual nor a faith group could possess any sort of scented oils since 2009.

Warden Neven explained in a declaration the NDOC security concerns as to **personal** possession of scented oils:

> (1) "are flammable under the right conditions" and, thus, constitute a danger to prisoners and staff;
> (2) "can be used to mask the scent of drugs and other types of contraband";
> (3) "have been used to create contraband inks, tattoo inks, and also inmate made alcohol[ ] known as 'pruno'";[16]
> (4) can harm prisoners who have "allergies"; and
> (5) can be used "for illegal bartering" when only a certain segment of the population may possess them.[17]

Neven also described additional burdens on staff, the mail room, and administrators because the prisons received "numerous packages sent to inmates from outside persons that contained scented oils and perfumes."[18] These packages needed to:

---

[14] 3-ER-301.
[15] 3-ER-301, *see also* ECF No. 84-1
[16] "Pruno" is a term used to describe inmate made alcohol.
[17] 3-ER-326, Declaration of Dwight Neven.
[18] *Id.*

(1) go through a pre-authorization process
(2) the oils must all be tested
(3) staff must determine if there are danger to other inmates in the unit due to the packet;
(4) it must be reviewed for being tainted by unknown sources; and provided testimony that it had "tried alternative methods of allowing inmates to possess scented oil/perfume, and based upon the[ir] common experiences[,] the Religious Review Panel .. formulated the ... [2009] policy" prohibiting all oils except for unscented mineral oil.[19]

### 3.  SUMMARY JUDGMENT DECISION

#### a.  QUALIFIED IMMUNITY DETERMINATION

The District Court found NDOC Employees to be entitled to qualified immunity regarding the timing of food delivery during Ramadan. Specifically, this Circuit had previously explained to an Arizona state prisoner in 2015, "the law was not sufficiently clear that a reasonable official would understand [that] he was required to provide a predawn meal, rather than a pre-sunrise meal, during Ramadan."[20]

This left only the question of whether NDOC Employees were entitled to qualified immunity for the alleged scented-oil violation. In this regard, the inquiry was whether it was clearly established in 2015 that the First Amendment or the RLUIPA prohibited the defendants from denying prisoners the ability to have scented oils under a policy that was created in light of the concerns and issues identified by Neven

---

[19] *Id.*
[20] *Wilson v. Ryan*, 604 Fed. Appx. 635 (9th Cir. May 29, 2015).

and after prison officials tried alternative methods and consulted with the Religious Review Panel.[21]

First, the District Court found that Johnson's two cases were misplaced.[22] Rather it found the NDOC case *Chernetsky v. State of Nevada,* also from the District of Nevada to be closed.[23] The *Chernetsky* matter concerned the same NDOC policy at issue here, which had been thrice appealed to the Ninth Circuit.

In *Chernetsky*, the District Court found prison officials were entitled to qualified immunity on Chernetsky's claims that their conduct in promulgating this policy violated his rights under the RLUIPA. The Ninth Circuit affirmed the qualified immunity decision, explaining the individual defendants were entitled to qualified immunity because Chernetsky failed to demonstrate that his rights to relief under RLUIPA were clearly established between 2004 and 2006."[24] The District Court found that the only material difference between *Chernetsky* and Johnson was the time frame. In this regard there has been no "controlling authority" or even "a robust consensus of cases of persuasive authority" since the Ninth Circuit's affirmance that

---

[21] 3-ER-257. The undersigned notes the members of the Religious Review Panel were not defendants.

[22] *Id.*, analyzing *Munir v. Scott*, 792 F. Supp. 1472 (E.D. Mich. 1992), rev'd by 12 F.3d 213 (6th Cir. Nov. 10, 1993) and *Baltoski v. Petorius*, 291 F. Supp. 2d 807, 809 (N.D. Ind. 2003).

[23] *Chernetsky v. St. of Nev.*, 2007 WL 9677057 (D. Nev. July 13, 2007), aff'd in part, vacated in part by 389 Fed. Appx. 709 (9th Cir. July 29, 2010) (unpublished).

[24] *Chernetsky*, 389 Fed. Appx. 709, at *1.

squarely governs the conduct and context of this case; thus the NDOC Employees were entitled to qualified immunity on the First Amendment claims regarding possession of scented oil.[25]

### b. SURVIVING CLAIMS FOR BENCH TRIAL

First, the District Court determined that neither side presented sufficient arguments addressing Johnson's allegation about being denied the Eid al-Fitr feast in 2014. Neither side carried their burden to gain a disposition.[26]

The District Court recognized that the new Administrative Regulation mooted many of Johnson's claims.[27] However the District Court determined the record was not sufficiently developed to make a determination as to whether the new Regulation significantly burdened Johnson's religious practices as to possession of scented oils in the cell rather than group possession.[28]

## B. BENCH TRIAL

The District Court's directive at trial was to determine whether Johnson was entitled to injunctive relief to possess religious scented oils in small quantities in his cell for personal use, and whether Johnson received his 2014 Eid Al Fitr feast for the end of Ramadan.[29]

---

[25] 3-ER-258.
[26] 3-ER-264.
[27] 3-ER-265.
[28] 3-ER-266.
[29] ECF No. 147, Pre-Trial Order.

### 1. TRIAL BRIEFING

Defendants contended the policy of storing scented anointing oil in the chapel, as opposed to allowing the inmates to possess scented anointing oil in the inmates' cells, did not substantially burden Johnson's ability to practice his religion. To wit, Johnson, like all other inmates, has the ability to purchase scented anointing oil and store it in the chapel.[30]

The NDOC also contended this new revised Administrative Policy advanced serious penological interests because allowing inmates to possess scented oil posed a serious security risk. The scented oils can be used to contaminate other inmates' food, cover the odor of illicit substances, and poses a fire risk.[31]

### 2. FACTS AND ISSUES GOING INTO TRIAL

The parties agreed that the following facts were uncontested going into trial: (1) Plaintiff Johnson is a practicing Muslim and requires scented prayer oils to complete his five-times daily prayer and to effectively practice his faith and religious beliefs; (2) NDOC's administrative regulation (AR) 810.2 does not allow inmates to possess scented anointing oil in their cells; and (3) (AR) 810.2 does permit inmates to purchase scented anointing oils oil and store it in the chapel

---

[30] *Id.*
[31] *Id.*

for personal use, and 810.2 further permits inmates to purchase and store unscented baby oil in their cell.[32]

Thus, the District Court would determine at trial (1) Whether AR 810.2 advances a serious penological interest by preventing inmates from storing dangerous, and flammable, liquids in their cells, and (2) whether AR 810.2 substantially burdens Plaintiff's religious rights by requiring him to store the scented anointing oil in the chapel, like all other practitioners.

### 3.   JOHNSON'S CASE IN CHIEF[33]

Johnson opened his case in chief describing the particularities of his religious belief, germane to this case that he needs to pray five times a day, that he is a devout Muslim, and described the ceremonies he needs to participate in.[34] He discussed the process that he is familiar with in ordering scented oils for group usage at the chapel.[35] He also described that he believed it necessary to have blessed scented oils for prayer, but that he typically could only use oil at group practice or with

---

[32] *Id.*

[33] Johnson testified as his only witness, because he had appointed counsel for trial, his testimony was presented in the standard question answer format rather than a narrative common in inmate matters.

[34] 2-ER-25.

[35] 2-ER-26.

a chaplain.[36] However, Johnson testified that he would not always be permitted to enter during other faith group practices.[37]

Johnson testified that the prisoners were permitted to order four different scents, in one-ounce bottles, but that the chaplain would then maintain the property.[38] The group property limit is six ounces.[39]

Johnson also testified that prior to the amendment of the regulations, there was no scented oils permitted for group practices.[40] He testified he had asked previously but that AR 810 (which would be amended) forbade the same.[41] Johnson testified that not personally having oils altered the way he needed to pray.[42]

Johnson also testified that baby oil was permitted in 14 ounce bottles but was not sufficient for his purposes.[43] Johnson did provide significant testimony as to Ramadan but that issue is not on appeal.[44]

### 4. DIRECTED VERDICT IS PARTIALLY GRANTED

The District Court granted a directed verdict in part as to the feast issue. Mr. Johnson's case in chief did not establish that the feast issue was continuing or worthy of and in need of injunctive relief.

---

[36] *Id.*

[37] 2-ER-33. Chaplain Snyder would later contest this statement, although the District Court never made a direct determination on the same.

[38] 2-ER-28.

[39] 2-ER-30.

[40] 2-ER-33.

[41] 2-ER-35.

[42] 2-ER-38.

[43] 2-ER-40.

[44] 2-ER-41.

Significantly, the testimony did not establish that the issue continued at any point for him post-2014 or there was any deficient policy.[45]

Lastly, Johnson noted he is classified for Lovelock Correctional Center but was at Southern Desert for the trial, and that the allegations occurred while he was at Southern Desert, High Desert State Prison, or Ely.[46]

### 5. THE NDOC CASE IN CHIEF

The NDOC presented testimony through three witnesses on the compelling governmental interests of institutional security, inmate/staff health, and judicious use of resources.

#### a. INSTITUTIONAL SECURITY

The NDOC's primary interest was setting forth the compelling government interests of institutional safety and security and preventing threats before they occur.

First and foremost, the NDOC has an interest in treating all inmates that are similarly situated equally.[47] Warden Neven provided testimony of specific security concerns:

- Oils could be used to create a slippery surface;

- The scented oils themselves cause the fumes that obstructs staff use of smell during cell searches and covers the smell of drugs or

---

[45] 2-ER-57.
[46] 2-ER-45
[47] 2-ER-64.

13

pruno;[48] Due to the molecular nature, the oils can be heated and diffused to make a significantly stronger scent than the oils in their natural state.[49]

• Heated oil can be used as a weapon to propel at officers or other inmates during fights when combined with pruno;[50]

• It can be used to make tattoo inks; tattooing is generally associated with prison gang culture and is not permitted at the NDOC;[51] specifically there is a value in scented oils to make colored inks;[52]

• It can be used to cover body odors for inmates especially with mental health issues that do not shower;

• And the idea that having a small segment of a population having privilege to possess an item creates bartering systems.[53]

The issues with bartering were particularly instructive given that the relief would make Johnson the sole possessor of an item usually restricted to group access only.[54] Thus, the testimony presented that a sole possessor has an item of extreme value.[55] Whether Johnson meant to engage in black market practices or not, the testimony hypothesized

---

[48] 2-ER-65.
[49] 2-ER-67
[50] 2-ER-67. Warden Neven testified as to seeing these oils heated, lit on fire and hurled at officers like small fireballs at 2-ER-68.
[51] 2-ER-71.
[52] 2-ER-71.
[53] 2-ER-65.
[54] 2-ER-75.
[55] 2-ER-82.

14

it would make him a target.[56] Limiting the opportunity for bartering is a significant security interest.[57]

However, testimony was presented advising that Johnson had been previously charged with offenses related to possession of contraband and/or bartering.[58]

Operational administrators testified that the scented oils were amongst the strongest smelling items at the commissary. Specifically Associate Warden Nash testified that scented oil, even in as small a quantity as one ounce was sufficient to cover up the smell of marijuana, heroin, or methamphetamine, especially if it was diffused by a heating device.[59] It also would be able to mask the smell of pruno.[60]

Lastly, the bottles themselves are a concern. After the oils are used, the bottles could be used for storing other items, e.g. tattoo ink, liquid drugs, but it would appear from the outside to be a scented oil.[61] It could also be used to store clean urine for drug tests.[62]

### b. DISCIPLINARY ISSUES WITH SCENTED OILS

Johnson as noted earlier was housed at Lovelock Correctional Center at the time of trial. Prior to trial, NDOC was investigating the

---

[56] 2-ER-82. Warden provided examples of inmates being attacked or extorted for possessing discontinued appliance items. 2-ER-84.

[57] 2-ER-86.

[58] 2-ER-127, 2-ER-128.

[59] 2-ER-183.

[60] 2-ER-185.

[61] 2-ER-188.

[62] 2-ER-189.

improper use of scented oils by other religions at the same institution.[63]

Within the first months of scented oils being permitted for group use there were several instances of concern. Inmates of the earth-based religions were smuggling out scented oils for bartering on the yard.[64]

A prisoner stole from the chapel and drank an entire bottle of oil.[65] Prisoners were trading scented religious oils to be used as cologne.[66] The bottles themselves were being used to hide other liquids.[67]

A group of Muslim inmate practitioners were found to have undertaken property infractions because they had smuggled scented oils out of the institution through ball point pens.[68]

Germane and identical to this issue, Associate Warden Nash presented testimony that following the initial ban on scented oils, a singular inmate was permitted to a limited quantity of scented oils under a federal court settlement.[69] She testified that the scented oil ended up being found all over the institution, being sold/traded throughout the facility.[70] She further testified when one inmate was allowed possession of an item others could not have, it created a valuable barter item.[71]

---

[63] 2-ER-142.
[64] 2-ER-145.
[65] *Id.*
[66] *Id.*
[67] 2-ER-146.
[68] 2-ER-178
[69] 2-ER-186.
[70] *Id.*
[71] *Id.*

### c.   INMATE HEALTH CONCERNS

The NDOC testified, in conjunction with concerns of illegal tattooing for gang purposes that there are also health concerns. Illegal tattooing results in the spread of Hep C and unintentional spreading of other diseases, AIDS, etc., because it's blood-to-blood-type contact.[72]

Next, the NDOC provided that good inmate hygienic practices are the best deterrence for spread of disease, viruses, and seasonal illness.[73] In this regard, the division eliminated most of their scented-type products from canteen because inmates (usually mentally ill) would use them to cover body odor. Thus, there is a concern if the oils are bartered, it would be used to cover scents.[74]

Naturally, the spread of disease in a confined environment is not limited to prisoners, but to staff as well.

Scented oils are not fit for human consumption. Thus, there was a concern that mentally ill inmates might drink if permitted on the yard.[75] Alternatively it could be used as a poison on others or those with suicidal tendencies.[76]

---

[72] 2-ER-75.
[73] 2-ER-78.
[74] 2-ER-79. Warden provided specific instances of norovirus spread that was intensified by prisoners with poor hygienic practices.
[75] 2-ER-80.
[76] *Id.*

### d. INSTITUTIONAL RESOURCE CONCERNS

NDOC presented testimony there would be an adverse reaction to operations if Johnson's relief was permitted.[77] Lovelock was understaffed with up to fifty vacant positions during trial.[78] Testimony presented that it would not be feasible to have oil delivered by staff for inmates to personally use for prayer five times daily.[79]

Next, the oils provide problems with certain drug testing protocols.[80] In this the oils had certain similar characteristics as opiates, and a chemical test of scented oils could present similar to illegal drugs. Thus, it confused or hindered drug testing.[81]

Last, although Johnson himself did not seem to share the same concerns, having one prisoner in possession of items no one else has can make them a target.[82] Thus it would take additional staffing and monitoring to ensure that there were no threats of harm to Johnson or to ensure his possessions were not targeted.[83]

The testimony presented that the staff was generally stretched thin already and adding the extra tasks of securing property for one

---

[77] 2-ER-150.
[78] *Id.*
[79] 2-ER-151.
[80] 2-ER-187.
[81] 2-ER-187.
[82] 2-ER-190.
[83] *Id.*

individual, delivering it, or monitoring the individual usage would be burdensome.[84]

### e.    ORDERING AND DISTRIBUTION PROCESS

Non-Party Chaplain Williams Snyder, from the religious review team provided updated information as to the ordering process and usage of scented oils following revisions to the administrative regulations.

First, each faith now had the ability to purchase scented oils, so this would not be limited to just Muslim inmates or earth-based religions, etc., and each faith group is allowed up to six bottles.[85] Members of the faith group who wanted to purchase oil would submit a request for approval of purchase of a religious item to the chaplain.[86] The oils came in five different varieties/scents/colors.[87]

The form is reviewed by the chaplain, approved by administration, and then filled with the canteen. When the oil arrives, it is reviewed by the person that ordered it, but once it arrives at the institution, it's considered group property or for group use only and no longer considered 'for individual use.'[88] So long as chapel is open, the oils are

---

[84] 2-ER-191.
[85] 2-ER-146.
[86] *Id.*
[87] 2-ER-161.
[88] *Id.*

available and may be distributed by chaplain, operational staff, or uniform staff.[89]

In regards to individual possession, prisoners are still permitted to own unscented oils and anoint themselves for daily prayers.[90] The Religious Review team was unaware of any specific requests to it by Muslim inmates that would permit the personal use of oils five times a day.[91]

### 6. DISTRICT COURT JUDGMENT

After reviewing the parties' trial briefs, proposed findings of fact and conclusions of law, and exhibits, along with the trial transcript and my notes taken during the trial, the District Court entered judgment in favor of the NDOC on all Ramadan/Eid Al Fitr claims, and against the defendants on Johnson's claim under RLUIPA for injunctive relief.[92]

The District Court found that the NDOC policy placed a substantial burden on Johnson's religious practices.[93] Specifically it found that by not permitting Johnson to maintain oils in his cell, it prevented him from "engaging in an essential part" of his Muslim practice.[94]

---

[89] 2-ER-147.
[90] *Id.*
[91] 2-ER-172.
[92] 1-ER-2, ECF No. 172.
[93] 1-ER-4.
[94] *Id.*

The District Court found that the NDOC's alternative argument that he could use unscented anointing oils in his cell, and scented oils in chapel ignored the significance of *scented* oils to Johnson's practice.[95] In this regard, the District Court found this to be an 'outright ban' on a specific religious exercise.[96]

The decision concentrated on whether the NDOC regulation was the 'least restrictive mean' to achieve a compelling state interest. While the District Court acknowledged and recognized that the NDOC security interests were compelling, it reasoned that the outright ban of permitting Johnson to maintain a small amount in his cell was not the least restrictive means possible.[97]

At trial, Johnson presented three alternatives: 1) having the chaplain administer oils five times a day, 2) having corrections officers administer the oils, or 3) having Johnson maintain half an ounce in his cell.[98] The District Court determined that the State met their burden in showing that the first and second alternatives were not feasible for both security and staffing resource purposes.[99] However it found that the State was unable to refute Johnson's proposal of having a half ounce of

---

[95] 1-ER-5.
[96] *Id.*
[97] 1-ER-6.
[98] 1-ER-6.
[99] *Id.*

21

liquid in his cell, while the rest of the bottles were maintained at the chapel.[100]

First it found that the cavalcade of consequences considered by NDOC would be mitigated by this compromise. Explicitly, it determined that concerns regarding scent were not warranted so long as the NDOC canteen still sold other scented items such as dryer sheets, soaps, deodorants, and lotions.[101] Additionally, the District Court reasoned that allowing inmates to keep fourteen-ounce bottles of unscented oils had the same if not more significant security concerns related to drenching items, weaponizing, or to prevent extractions.[102]

In sum, it found this compromise to be reasonable since the chaplain could specifically track oil provided, there would be no concerns of possession of the one-ounce bottles, and the oil would be portioned out in very small amounts so that it could be tracked for usage and possible contraband spikes.[103]

## IV.   STANDARD OF REVIEW

Following a bench trial, the judge's findings of fact are reviewed for clear error.[104] "This standard is significantly deferential, and we will accept the lower court's findings of fact unless we are left with the

---

[100] *Id.*
[101] 1-ER-7.
[102] 1-ER-7.
[103] 1-ER-8.
[104] *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir.2002).

definite and firm conviction that a mistake has been committed."[105] The district court's conclusions of law following a bench trial are reviewed *de novo*.[106] The district court's computation of damages following a bench trial is reviewed for clear error.[107]

In the instant matter, the NDOC is only challenging the conclusions of law for legal error, thus the *de novo* standard governs all issues herein.

## V.    SUMMARY OF ARGUMENT

The District Court's decision erred in three critical ways. First, it permitted Johnson to maintain oils in his cell based upon testimony about the security and operating procedures at a different prison than the one he was housed at. It is well settled that inmates at different institutions are not similarly situated, thus declaratory relief is inappropriate as a statewide remedy.   Second, it failed to consider authority from this Circuit and secondary authority finding that have rejected RLUIPA challenges to prison regulations that restrict personal possession of scented oil.   Third, it permitted Johnson to present for the first time, at trial, his suggested alternative, less restrictive means of restricting the possession of oils based upon a new version of the challenged regulation.

---

[105] *N. Queen Inc. v. Kinnear*, 298 F.3d 1090, 1095 (9th Cir.2002) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1076 (9th Cir.2002)).

[106] *Brown v. United States*, 329 F.3d 664, 671 (9th Cir.2003).

[107] *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir.2002).

# VI.   ARGUMENT

## A.   RELEVANT LEGAL STANDARDS

### 1.   CIVIL RIGHTS CLAIMS UNDER § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights."[108] The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]"[109] and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes."[110]

Claims under § 1983 require a plaintiff to allege (1) the violation of a federally protected right by (2) a person or official acting under the color of state law.[111] Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.[112]

### 2.   RLUIPA

The United States Supreme Court has held that inmates retain protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion."[113] But the

---

[108] *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).
[109] *Conn v. Gabbert*, 526 U.S. 286, 290 (1999),
[110] *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).
[111] *Warner*, 451 F.3d at 1067.
[112] *Id. See also* 42 U.S.C. § 1983.
[113] *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987).

Supreme Court has also recognized that certain limitations on an inmate's free-exercise rights "arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security."[114]

A prison regulation that impinges on inmates' constitutional rights must be reasonably related to a legitimate penological interest.[115] At the same time, RLUIPA prohibits the imposition of a substantial burden on prisoners' religious exercise "unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering" that interest.[116]

## B. ANALYSIS

### 1. THE NDOC CONSIDERED ALTERNATIVE MEANS

Prior to trial, Johnson never specified an amount of scented oils and just made a blanket request to be permitted oils. Indeed, in its summary judgment disposition, the District Court noted it was unclear how much, when, where, or what kind of oils Johnson meant to possess. It was not until Johnson's case in chief that he was permitted to provide three different options of less alternative means, 1) having the chaplain send the oils five times a day, 2) having custodial staff deliver oils five

---

[114] *Id.*
[115] *Turner v. Safley*, 482 U.S. 78, 89 (1987).
[116] 42 U.S.C. § 2000cc-1(a)(1)–(2).

times a day, or alternatively 3) personal possession of .5 ounce of oils in his cell.[117]

Administrative Regulation (AR) 810, and its subparts, govern religious practice at the NDOC institutions. The current version of AR 810 became effective on November 16, 2016, just prior to dispositive motions being filed. Previously, versions did not allow inmates to use scented oil at all.

Johnson's RLUIPA claims should more or less have been rendered moot at that point because the NDOC undertook a wholesale revision of the administrative regulation. Johnson's complaint was never amended to now challenge that this new policy is still too restrictive and that he should be able to possess .5 ounces in his cell.

In this regard, the NDOC dispositive motions only addressed the idea of unlimited personal possession of scented oils by all inmates, and the concept of being able to order oils from approved vendors.[118]

A complaint is not a living breathing document. It may be amended, true, but the operative version is to some extent a freeze frame in time.

Johnson's operative complaint is challenging a blanket ban on scented oils in the entirety of the facility. The District Court acknowledged that Johnson never set forth any clear idea of an

---

[117] 2-ER-96. Also noted at 1-ER-6.
[118] 3-ER-303.

alternative means that included the amount of inmates that could possess, the amount that could be possessed, or how it could get transported.

The administrative policies at trial were based upon a whole new version of the regulation from the complaint and dispositive motions. Thus, the NDOC was essentially in a 'trial by ambush' at the evidentiary trial by having to defend three new 'alternative policies' based upon a version of the administrative regulations that was not in place for Johnson's complaint and was not contemplated at dispositive motions.

To wit, most of the dispositive motion practice considered the impropriety and burden on the mail room and intake staff for Johnson's original injunctive relief.[119] These two branches of the facilities would have little involvement with any of Johnson's alternative means presented at trial.

With its new administrative regulation revision, the NDOC did consider alternative means: It permitted all religious groups to have possession of scented oils as chapel property, it permitted all inmates personal possession of unscented anointing oils, and it permitted the use of incense during supervised group services for a pleasant aroma.[120]

---

[119] 3-ER-303.
[120] 3-ER-304.

A RLUIPA analysis is not a moving target. The NDOC considered and implemented change to the challenged policy. Johnson's opposition to summary judgment did not include any of his new alternative means of practice.[121] Johnson did not amend his complaint to request new relief after the revision of the policy.

Simply put, the District Court erred because trial should not be the first time that a correctional department has the opportunity to refute 'less alternative means.' It was incumbent on Johnson to amend his claims for the new complaint or set forth these specific less alternative means in motion practice of a complaint paper. Alternatively, the District Court could have and should have provided for supplemental briefing on the new policy and Johnson's new 'least restrictive' suggestions.

A remand for supplemental briefing or a reversal would be consistent with *Warsoldier's* admonition that a prison must consider the inmate's suggested alternative. It is now well established that Under RLUIPA, prison officials bear the burden of establishing that the restriction challenged is the "least restrictive alternative to achieve" a compelling governmental interest.[122] "[N]o longer can prison officials justify restrictions on religious exercise by simply citing to the need to

---

[121] 3-ER-286.
[122] *See Warsoldier,* 418 F.3d at 998.

maintain order and security in a prison."[123] Prisons must now demonstrate that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice."[124]

The prison never had the opportunity to actually consider, reject, or apply Johnson's alternative measures because they were not raised until after dispositive motion ruling, and they were raised on a revised version of the challenged administrative regulation from Johnson's operative complaint. Per *Warsoldier*, NDOC never had the opportunity to show they actually considered and rejected the measures.

### 2. CASE LAW PROVIDES CLEAR ERROR

#### a. AR 810 DOES NOT IMPOSE A SUBSTANTIAL BURDEN

Although RLUIPA does not define substantial burden, the Ninth Circuit has defined it as a burden that "must impose a significantly great restriction or onus."[125]  However, several courts both in this Circuit and otherwise have already held that the denial of scented oils for daily prayers does not substantially burden an inmate's religious practice.

In *Blake v. Rubenstein*, a District Court in Virginia found the prison's policy of forbidding scented oil for worship did not prevent

---

[123] *Alvarez v. Hill,* 518 F.3d 1152, 1156–1157 (9th Cir.2008) (citing *Greene v. Solano County Jail,* 513 F.3d 982, 989 (9th Cir.2008)).

[124] *Warsoldier,* 418 F.3d at 999.

[125] *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005).

inmates from engaging in worship.[126] In *Blake*, the plaintiff argued they could not "properly perform Hare Krishna Deity worship because they cannot obtain or possess scented oils."[127]

Court agreed officials did not impose a substantial burden because inmates could use unscented oils during prayer services and found "Plaintiffs are not prevented from engaging in worship by using unscented oils."[128]

Similarly, the Northern District of California found that while the denial of scented oil presents "some impediment, it "does not constitute a significantly great restriction upon the exercise of [plaintiff's] religious beliefs, nor does it make the religious exercise effectively impracticable."[129]

In *Curry*, the issue was whether the prohibition on scented oils substantially burdened the plaintiff's religious exercise, which consisted of praying three times daily.[130] The Court found, that the plaintiff was not prevented from praying three times a day without the oil.[131]

---

[126] 2016 WL 5660355, *23 (S.D.W. VA. Apr. 5, 2016) (holding plaintiff was "merely prevented from engaging in worship in their preferred manner by using scented oils.").

[127] *Id.* at 22.

[128] *Id.* at 23.

[129] *Curry v. California Dep't of Corrections*, 2012 WL 968079, *6 (N.D. Cal. Mar. 21, 2012).

[130] *Id.*

[131] *Id.*

Accordingly, the Court found the denial of scented oils did not present a substantial burden and thus did not violate RLUIPA.[132]

This Court has rejected RLUIPA challenges to prison policies that restrict scented oil.[133] *Riggins* held an inmate could not demonstrate the lack of oil substantially burdened his religious practice and thus the policy did not violate RLUIPA.

In *Nance v. Miser*, this Court expressly approved of a prison policy that allowed inmates to "order scented oils from an approved vendor, to be stored by the chaplain, and used under the chaplain's supervision."[134] The *Nance* situation is congruent with the instant case and the revised administrative regulations. Inmates may purchase scented oils from an approved vendor, the chaplain stores them as chapel property, and the scented oils in question are used under chaplain supervision.

Indeed, Nevada Courts had previously found a nigh identical restriction to be the 'least restrictive' means of enforcement. "In the prison context, banning substances with strong smells from prison cells, where constant, direct, individual supervision is unfeasible, is the least restrictive means to further these compelling interests."[135]

---

[132] *Id.*

[133] *See Riggins v. Clarke*, 403 Fed.Appx. 292, 295 (9th Cir. 2010).

[134] 700 Fed.Appx. 629, 633 (9th Cir. 2007). *See also Jenkins v. Sinclai*r, 2018 WL 4608312 (W.D. Wash. Sep. 4, 2018,) ("The Ninth Circuit has expressly approved limitations on prisoner access to religious oils.").

[135] *Anderson*, No. 2:-07–cv–01117–RCJ–RJJ, at *5.

31

At most, the NDOC's policy prevents Johnson from "engaging in worship in [his] preferred manner by using scented oils."[136] However, this "does not constitute a significantly great restriction upon [Johnson's] religious beliefs" as a matter of law.[137] Accordingly, the evidence has demonstrated that the denial of scented oil is not a substantial burden on Johnson's religious practice.

### b. NDOC PRESENTED COMPELLING INTERESTS

The revised AR 810's policy of storing scented oil at the chapel furthers several compelling government interests. "[I]t bears repetition, however, that prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area."[138] "Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions.[139]

As testified by Warden Neven and Associate Warden Nash, NDOC staff depend on their sense of smell to detect contraband or health/security issues. In an extremely similar case, Nevada Federal Courts had previously found banning substances with a strong smell from cells serves a compelling government interest, and thus did not violate RLUIPA. [140]

---

[136] *See Blake,* 2016 WL 5660355 (S.D.W. VA. Apr. 5, 2016).

[137] *Curry*, 2012 WL 968079 at *6.

[138] *Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005).

[139] *Id.* at 722-23 (citing 139 Cong. Rec. 26190 (1993) (remarks of Sen. Hatch).

[140] *Anderson v. Vare*, No. 2:07–cv–01117–RCJ–RJJ, 2010 WL 11623518, at *5 (D. Nev. Apr. 1, 2010).

In *Anderson*, less than ten years before and following *Warsoldier*, Nevada Courts found that "the scent of a burning herbs would render the only reliable method of immediate detection of marijuana use—the guards' sense of scent—practically worthless."[141] This Court held the NDOC's policy did not violate RLUIPA. Specifically, it found NDOC's policy served several compelling interests, including the finding that the herbs would "mask the scent of marijuana and other banned substances" and thus it furthered the compelling interest of prison safety.[142]

The NDOC raised the same concerns, but the District Court found the availability of scented hygienic items at canteen to be reason sufficient to allow scented oils. But there is a difference, as NDOC testified, oils may be diffused with heating items and thus provide much stronger masking scent than a bar of soap or lotion.

Other courts have found prison policies limiting the in-cell possession of scented oils furthered the compelling interest of government security. In *Levie v. Ward*, a Western District of Oklahoma found the prison's "prohibition of in-cell possession of religious oils, incense and herbs serves a compelling governmental interest through least restrictive means."[143]

---

[141] 2010 WL 11623518, *5 (D. Nev. Apr. 1, 2010).
[142] *Id.* at *5.
[143] 2007 WL 2840388, at *17 (W.D. Okla. Sept. 27, 2007).

Similarly, the Tenth Circuit found restrictions on scented oils ensure institutional safety.[144] The testimony presented that AR 810's restriction on scented oils furthers the compelling government interest of safety and security.

To be sure, the concerns were not hypothetical. The NDOC provided examples of current investigations involving inmates at both Lovelock and Southern Desert, Johnson's former and current institutions of inmates smuggling scented oils out of the chapel and selling them.

The NDOC testified the scented oils can be used to cover the smell of contraband, including: marijuana, "pruno," crack cocaine, methamphetamine, liquid meth, and fires. In fact, prisons across the country have raised similar concerns regarding the possession of scented oils in the inmates' cells, and previous Courts have found these concerns valid.[145]

### 3. THE INJUNCTIVE RELIEF IS OVERLY BROAD AND/OR MOOT

Lovelock and Ely State Prison (and also Southern Desert and High Desert where Johnson has since been housed at) are different

---

[144] *Al-Amin v. Morton*, 528 Fed. Appx, 838, 843-44 (10th Cir. 2013).

[145] See *Hammons v. Saffle*, 348 F.3d 1250, 1255 (10th Cir. 2003) ("constraining prayer oil use to supervised, communal areas decreased the likelihood that these oils would have been used by inmates to make the odor of drugs[.]"); *Richardson v. Irons*, 877 F.2d 60, 601989 WL 64178, *1 (4th Cir. 1989) (finding oils, like incense, "could be used to hide marijuana use")

institutions with different operating procedures. Because Johnson was transferred from Ely State Prison (the institution that is the target of his requested injunctive relief) to LCC (which is not mentioned in the Complaint), this Court cannot "grant any effectual relief[.]"

This Court's sister circuit succinctly noted this impossibility in *Incumaa v. Ozmint*, stating:

> Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice . . . he no longer has a legally cognizable interest in a judicial decision on the merits of his claim. Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted.[146]

Johnson filed his claim while incarcerated at Ely State Prison, which was at the time a maximum-security prison. Johnson was incarcerated at Lovelock prior to his trial, a medium security prison specializing in protective segregation housing. All of the testimony was regarding staff resources and security at Lovelock.

Johnson was transferred to Southern Desert during trial, a two thousand inmate facility with mainly general population. He has also been housed at High Desert, the largest state facility with intake, twelve housing units and seven different classification levels.

---

[146] 507 F.3d 281, 287 (4th Cir. 2007); *see also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir.1996) ("Higgason's transfer from Indiana State Prison (ISP), where DCH was located, to Wabash Valley Correctional Institute (WVCI) rendered his claims for injunctive relief moot").

Inmates at Lovelock, Ely, or the southern institutions are not similarly situated. Thus, testimony relevant to security/staffing issues are different at Lovelock than a larger general population facility. There will be different concerns based on the logistics of each facility and the District Court should not have given a 'one size fits all' order that would apply across institutions. While there might not be as many threats of violation at a fully protective segregation institution, there are likely wholly different concerns at a large institution with behavior modification units, max security inmates, or large general population institutions.

## VII. CONCLUSION

The District Court's decision tried to strike a reasonable middle ground but was ultimately inappropriate, as this middle ground had never been presented for NDOC consideration prior to trial. The evidentiary hearing was tantamount to 'trial by ambush.' It was not until trial that Johnson suggested his less restrictive policies, based upon a new regulation not previously challenged, and while housed at an institution with entirely different security/inmate logistics than his previous housing situation.

The trial court's ruling should be reversed because it is procedurally inappropriate and legally runs afoul of existing precedent and jurisprudence regarding individual inmate's rights to possess scented oils.

Alternatively, this Court should vacate the judgment, and remand it for supplemental briefing that considers the present version of the religious regulation, and permits the NDOC to address Johnson's suggested least restrictive means in motion practice rather than for the first time after a plaintiff case in chief.

Respectfully submitted March 31, 2021.

AARON D. FORD
Attorney General

By: /s/ *Frank A. Toddre, II*
    D. Randall Gilmer (Bar No. 14001)
    *Chief Deputy Attorney General*
    Frank A. Toddre II (Bar No. 11474)
    *Senior Deputy Attorney General*
    OFFICE OF THE ATTORNEY GENERAL
    *Attorneys for the Defendants-Appellees*

## STATEMENT OF RELATED CASES

The undersigned asserts that to the best of his knowledge, there are no other related cases pending in the Ninth Circuit Court of Appeals.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached answering brief is proportionately spaced, has a typeface of 14 points or more and contains 7,551 words.

Respectfully submitted March 31, 2021.

AARON D. FORD
Attorney General

By: /s/ *Frank A. Toddre, II*
   D. Randall Gilmer (Bar No. 14001)
   *Chief Deputy Attorney General*
   Frank A. Toddre II (Bar No. 11474)
   *Senior Deputy Attorney General*
   OFFICE OF THE ATTORNEY GENERAL
   *Attorneys for the Defendants-Appellees*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **APPELLANT'S OPENING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 31, 2021.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. As such, I have served the foregoing document via electronic mail to:

Lausteveion Johnson #82138
High Desert State Prison
P.O. Box 650
Indian Springs, Nevada 89070
HDSP_LawLibrary@doc.nv.gov


/s/ *Trisha Jones*
An employee of the
Office of the Nevada Attorney General